**AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, AFL–CIO, Plaintiff,**

v.

**BENTON & BOWLES, INC., Defendant,**

No. 85 Civ. 1067 (GLG).

United States District Court, S.D. New York.

Feb. 3, 1986.

Mortimer Becker, New York City, for plaintiff; Robert M. Jaffe, George C. Zaferiou, of counsel.

Davis & Gilbert, New York City, for defendant; Howard J. Rubin, Janet Linn, of counsel.

GOETTEL, District Judge.

The plaintiff, American Federation of Television and Radio Artists, AFL–CIO ("AFTRA"), brought this action to vacate and modify a portion of an arbitration award. AFTRA now moves for summary judgment pursuant to Fed.R.Civ.P. 56. The defendant, Benton & Bowles, Inc. ("B & B"), cross-moves for summary judgment confirming the award.

## I. Background

The facts on this motion are essentially undisputed. The action is, therefore, ripe for summary judgment.

AFTRA is a labor union representing, among others, television performers throughout the United States. Defendant B & B, as part of its business, produces television programs. Both AFTRA and B & B were, at all pertinent times, parties to a collective bargaining agreement known as the 1979–82 AFTRA National Code of Fair Practice for Network Television Broadcasting (the "TV Code"). The TV Code governs the terms and conditions of employment of performers on programs originally produced for network television.[1]

### A. The TV Code

The TV Code sets a pay-scale for compensating performers when programs in which they appeared are subsequently rebroadcast. The compensation varies depending on the nature of the rebroadcast. The TV Code provides for "re-play" fees in the event a program is rebroadcast over "free" television, as opposed to cable or pay television. An addenda to the Code specifies substantially smaller fees payable when a program is released for exhibition on pay cable, on basic cable, in flight, or on video cassette.

The TV Code also restricts a producer's right to "edit" a previously broadcast pro-

---

**1.** Hundreds, if not thousands, of producers have    signed this agreement.

gram without first obtaining AFTRA's consent on mutually agreeable terms and conditions. Specifically, subparagraph 73(d) of the TV Code provides, in pertinent part, that "no excerpt, part, portion, segment or version of any program or edited variation thereof or combination of program material, may be used in any manner or for any purpose unless AFTRA consents thereto upon terms and conditions as mutually agreed upon." Jaffe Affidavit, Exhibit A ¶ 73(d). However, a producer has the right to "replay an edited-down program, where editing is required by program time exigencies." *Id.* Disputes between a producer and AFTRA are arbitrable under a very broad arbitration clause in the TV Code.[2]

### B. The Dispute

In 1981 and 1982, B & B produced "Texas," a soap opera. During those years, "Texas" was exhibited over the facilities of the National Broadcasting Company ("NBC") television network. "Texas" was seen over "free" television. Each episode of "Texas" as originally produced and exhibited was sixty minutes in length. NBC cancelled "Texas" in December 1982.

B & B thereafter entered into an agreement with WTBS Superstation, Inc. ("Superstation") to provide "Texas" to Superstation for exhibition as two thirty-minute episodes on consecutive days each week. B & B did not obtain AFTRA's consent to provide "Texas" to Superstation in two thirty-minute versions as opposed to one sixty-minute program. Commencing on October 3, 1983, Superstation exhibited the original "Texas" episodes over the facilities of WTBS, a "free" television station in the

Atlanta area, and, simultaneously, via satellite to cable television systems throughout the country.[3]

As compensation for these rebroadcasts, B & B paid performers who appeared on the episodes of each program the fees payable under the TV Code when a network television program is rebroadcast over basic cable. AFTRA objected to this, contending that "Texas" performers were entitled to both the basic cable fee *and* to the far greater payment for rebroadcasts over free television. A dispute having arisen between AFTRA and B & B concerning the fees paid by B & B to the performers who appeared on "Texas" and with respect to B & B's right to edit "Texas" into two thirty-minute programs, AFTRA served and filed an arbitration demand, pursuant to the arbitration provisions of the TV Code.

On November 26, 1984, following nine separate days of hearing memorialized in over 1100 pages of trial transcript and 90 exhibits, the arbitration panel rendered its opinion and award. Bertram T. Kupsinel, the neutral arbitrator and chairman of the arbitration panel wrote the opinion. The B & B-designated arbitrator concurred.[4] The AFTRA-designated arbitrator dissented.

### C. The Arbitration Opinion and Award

Bertram Kupsinel's opinion concludes that B & B violated the TV Code by exhibiting the one-hour program as two one-half hour programs without obtaining AFTRA's consent. According to the opinion, this editing was not required by "program time exigencies." With respect to the fee dispute, the panel found that the TV Code did

---

**2.** It reads,

All disputes and controversies of every kind and nature whatsoever between any Producer and AFTRA or between any Producer and any member of AFTRA, arising out of or in connection with this Code, and any contract or engagement (whether overscale or not, and whether at the minimum terms and conditions of this Code or better) in the field covered by this Code as to the existence, validity[,] construction, meaning, interpretation, performance, non-performance, enforcement, operation, breach, continuance, or termination of this Code and/or such contract or engage-

ment, shall be submitted to arbitration in accordance with the following procedure and such arbitration shall be conducted under the Voluntary Labor Arbitration Rules then obtaining of the America[n] Arbitration Association except as otherwise provided herein. Jaffe Affidavit, Exhibit A ¶ 95.

**3.** Superstation cancelled "Texas" in June 1984.

**4.** However, he felt compelled to state his disagreement with many of the conclusions reached in the opinion.

not address the question of what fees were due when a program is simultaneously shown on both free TV and basic cable. Nor had the parties ever agreed on this question.

The arbitration panel specifically rejected the remedies requested by each party. These included AFTRA's suggestion that it award both a replay fee and a cable fee, B & B's invitation to deem sufficient the basic cable fee that it had already paid, and AFTRA's suggestion that it award double the cable fee, in addition to any other fee award, to compensate for the improper editing.

The panel recognized that the parties had previously tried and failed to settle their dispute. It therefore refused to direct the parties to negotiate, since such a direction would have served no purpose. Instead, it ordered that

> Benton & Bowles, Inc. shall forthwith pay to each performer an additional sum of money equal to the amount already paid to each performer in "Texas" to date for rebroadcasts on WTBS.
>
> Should any further rebroadcasts of the program "Texas" take place in the same one-half hour format, then each performer shall be paid double the amount each had been paid for rebroadcasts on WTBS prior to the date of this award.

Jaffe Affidavit, Exhibit B.

### D. The Current Action

Both parties agree that their dispute was arbitrable. But, according to the plaintiff, the arbitrators exceeded the scope of their contractual authority as proscribed by subparagraph 95(g) of the TV Code which states, "Nothing herein contained shall be deemed to give the arbitrators the authority, power or right to alter, amend, change, modify, add to or subtract from any of the

provisions of this Code." Jaffe Affidavit, Exhibit A ¶ 95(g)e. AFTRA maintains that a literal reading of the TV Code requires payment of both a replay fee and a cable fee, and that the arbitrators had no right to depart from the express provisions of the TV Code in this regard. It also challenges their authority to exceed their powers and permit Superstation to continue to rebroadcast "edited" programs without AFTRA's permission. AFTRA now seeks an order vacating in part and modifying in part the award by including therein (1) a direction enjoining B & B from further editing or using edited versions of "Texas" without obtaining AFTRA's consent, and (2) a direction to B & B to pay performers who appeared in the "Texas" episodes the combined basic cable and replay fees that it had sought before the arbitrators. Alternatively, AFTRA seeks an order vacating the entire award and directing the arbitrators to render a new award consistent with the foregoing.

### II. Discussion

The federal courts have narrowly circumscribed review of arbitration awards, recognizing that such review derogates from the purpose of arbitration itself.[5] Nevertheless, the powers of an arbitrator are "not unlimited in the resolution of labor disputes. The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil Co. v. International Association of Machinists and Aerospace Workers*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). In construing ambigu-

---

**5.** In accord with the general policy against modification of arbitration awards, section 11 of the Federal Arbitration Act, 9 U.S.C. § 11 (1982), permits modification of an award in three, very-limited circumstances. The section permits modification when, "(1) there is an evident material miscalculation of figures or a material mistake in ... description ...; (2) the arbitrators have awarded upon a matter not submitted

to them ...; (3) the award is imperfect in matter of form not affecting the merits of the controversy." *Id.* Since, AFTRA has not and cannot allege that any of these circumstances are present, we are powerless to modify the award. The only relief that we can provide is an order vacating the award and remanding to the arbitrators for further proceedings.

ous provisions, the arbitrator is free to examine the entire contract, its content, prior negotiations between the parties, industry practice, and any other indicia of the parties intentions. *Torrington Co. v. Metal Products Workers Union Local 1645,* 362 F.2d 677, 681 (2d Cir.1966) (negotiations); *Desert Palace, Inc. v. Local Joint Executive Board,* 679 F.2d 789, 792 (9th Cir.1982) (language, content, and other indicia); *Detroit Coil Co., supra,* 594 F.2d at 579 (practices of the shop). Likewise, an arbitrator may fashion a remedy to meet an unanticipated problem.

> As long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute. *See* F. Elkouri & E. Elkouri, *How Arbitration Works* 299–302 (3d Ed.1973). In such cases, judicial review is limited to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement.

*Desert Palace, Inc., supra,* 679 F.2d at 793. *See also United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There is a need for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.")

■ However, an arbitrator may not exceed the limits of his contractual authority.

If the arbitrator's award is not derived in some rational way from the collective bargaining agreement, it must be overturned.[6] *Detroit Coil Co., supra,* 594 F.2d at 579. In particular, where a clause in an agreement to arbitrate prohibits an arbitrator from adding to or modifying an agreement, additions or modifications to that agreement will be vacated. *Torrington Co. v. Metal Products Workers Union Local 1645, supra,* 362 F.2d 677.

■ The plaintiff contends that the arbitrators erred in formulating a remedy to compensate the performers for the rebroadcasts when the TV Code itself provided one. In so arguing, they misread the panel's findings. Although the arbitrators stated that Superstation is both a free television and a basic cable system, Opinion of the Chairman at 9, Jaffe Affidavit, Exhibit B, their essential finding was that the TV Code did not contemplate the existence of such a hybrid broadcasting network and did not require that performers be reimbursed with both cable and replay fees. Thus, the panel was free to fashion a remedy to meet this novel situation. The arbitrators awarded a rebroadcast fee that falls between the basic cable and television replay fees. Although far closer to the former than to the latter, it appears plausibly derived from the "general framework of the agreement." In the absence of a viable alternative,[7] we decline to upset this aspect of the award.

■ The arbitrators' decision with respect to the improper editing is more troublesome. The panel found that rebroadcasting "Texas" in one-half hour segments without AFTRA's consent was a violation of the TV Code. The panel's award, which implicitly authorizes the continued showing

---

**6.** [A]n arbitrator is confined to interpretation and application of the … agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

**7.** The Court can not find fault with the arbitrators' conclusion that ordering further negotiations would have been fruitless. *See supra* p. 685.

of one-half hour episodes, runs directly contrary to this uncontested finding. This aspect of the arbitrators' award exceeded the limits of their contractual authority. We therefore vacate and remand this award to the arbitrators with an instruction to modify the award to enjoin B & B from showing "Texas" in the future in any form other than the original one-hour programs without AFTRA's consent and with further instructions to delete the reference in the fifth paragraph of the award to "in the same one-half hour format." The award is to remain unchanged in all other respects.

III. Conclusion.

The decision of the arbitrators is vacated. The Clerk will enter a judgment of remand to the arbitration panel to proceed in accordance with this opinion.

SO ORDERED.