**LOCAL 814, affiliated with the INTER-NATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, Plaintiff,**

v.

**SOTHEBY'S, INC., Defendant.**

**No. 86 CIV. 8986 (PKL).**

United States District Court, S.D. New York.

July 30, 1987.

Friedman, Levy-Warren & Moss, New York City, for plaintiff; April D. Harris, of counsel.

Weil Gotshal & Manges, New York City, for defendant; Mark A. Jacobi, of counsel.

OPINION & ORDER

LEISURE, District Judge:

In this proceeding, plaintiff, Local 814, affiliated with the International Brother-hood of Teamsters, Chauffeurs, Ware-housemen and Helpers of America ("Local 814") has moved pursuant to Fed.R.Civ.P.

56 for summary judgment seeking the enforcement of a labor arbitration award. Defendant Sotheby's, Inc. ("Sotheby's"), a corporation doing business in the State of New York, with its principal office located in New York City, has cross-moved pursuant to Fed.R.Civ.P. 56 for summary judgment on its counterclaim seeking to have the award set aside. For the reasons set forth below, defendant's motion is granted. The award, therefore, is vacated.

## BACKGROUND

The Court has jurisdiction of the Complaint and counterclaim under § 301 of the Labor Management Relations Act of 1947, as amended (the "Act"), 29 U.S.C. § 185 and 28 U.S.C. § 1337. The following facts are developed from the Stipulation of Material Facts not in Dispute ("Stipulation") submitted by the parties and the Award and Opinion of the arbitrator ("Award"). *See* Stipulation, Exhibit B, attached thereto.

Sotheby's is a world-renowned art auction house. During 1986, Sotheby's received on consignment, from clients residing within and outside the State of New York, property, including paintings, sculptures, decorative arts, furniture and jewelry, valued in excess of $350 million. Sotheby's is an employer in an industry affecting commerce, as defined under the Act. Local 814 is a labor organization, as defined under the Act. Local 814 is the recognized exclusive bargaining representative of certain employees [1] at Sotheby's facilities in New York, New York. Sotheby's and Local 814 are parties to a collective bargaining agreement, which was in effect July 1, 1983, through June 30, 1986, and which has been extended by the parties, and remains in effect, as amended (the "Agreement"). *See* Stipulation, Ex. A.

Kevin R. Roberts, the employee whose discharge is the subject of this case, was employed as a receiptor on the loading dock at Sotheby's main facility on York Avenue in Manhattan. His job included logging Sotheby's receipt of property, uncrating or unwrapping the exterior packaging, and forwarding the property to the appropriate department for further handling. Stipulation, Ex. B. at 2, 3, 8. Roberts was not a long-service employee. He had been employed at Sotheby's for four years, over a 5½ year period. Stipulation, Ex. B at 10. A few months prior to the incident which led to his discharge, Roberts had been warned never to use a knife to open packages after a valuable painting was reported to have been received with two knife slashes, the cause of which could not be established. Stipulation, Ex. B. at 7, 9, 10.

In February, 1986, eight painted Chinese scrolls were received for auction at Sotheby's London facility. Stipulation, Ex. B. at 2. There, the scrolls were each wrapped separately in tissue paper. They were then wrapped in two groups of four scrolls in plastic bubble wrap. Lastly, the bubble wrap packages were wrapped together in a single package of brown kraft paper sealed with plastic sealing tape. The package was personally transported from London to New York via airplane by the Sotheby's Vice-President in charge of Chinese paintings, delivered by him to U.S. Customs at John F. Kennedy Airport, and then delivered to Sotheby's by its Customs broker. Stipulation, Ex. B. at 3–4.

Contrary to the specific instruction that he was never to use a knife on items he received, Roberts slit open the package of Chinese scrolls with a knife. In doing so, Roberts sliced through the packaging materials and through several turns of one of the scrolls, identified as the "Xu Yang Tiger Hill" scroll, which was valued at no less than $6,000. Stipulation, Ex. B at 1–2, 7–10. Roberts then failed to report immediately the damage; again, in direct contravention of his job requirements. Instead, he held the scrolls in his office for several days. Subsequently, Roberts rewrapped the damaged scroll in newsprint used only in Sotheby's New York facility, and delivered the eight scrolls to the Central Receiving Department, again without reporting the damage. Stipulation, Ex. B. at 7–10.

---

**1.** These employees are principally involved in the physical work of handling property con-

signed to Sotheby's for auction by its clients. Stipulation, Ex. A Section 1(A).

Sotheby's Vice-President in charge of Chinese paintings discovered the damage when he removed the newsprint wrap from the Tiger Hill scroll and the tissue wrap from the other seven scrolls and found the knife slits in the Tiger Hill scroll. Stipulation, Ex. B at 3. An investigation of the damaged scroll was undertaken immediately.

During the investigation, Roberts admitted to having received and opened the package containing the scrolls. Nevertheless, he denied knowledge of the damage, as well as of its possible cause. Roberts claimed that he had opened the package's outerwrap by tearing open the wrapping at its ends; he denied that he had used any sharp tool to open the package. Stipulation, Ex. B at 5–6. Sotheby's officials, however, retrieved, out of the garbage dumpster at the loading dock, part of the kraft paper outerwrap and the entire plastic bubble wrap. Stipulation, Ex. B. at 4. Comparison of the wrapping retrieved from the dumpster with the damaged scroll indicated that both layers of wrapping had been slit open in a pattern which matched perfectly the slit in the scroll. This physical evidence and other facts gathered during the investigation notwithstanding, Rob-

erts continued to deny his culpability for the damaged scroll. Subsequently, on or about February 20, 1986, and pursuant to Section 15 of the Agreement[2], Sotheby's informed Roberts that he was being discharged for his dishonesty.

Subsequent to Sotheby's discharge of Roberts, Local 814, pursuant to Section 16 of the Agreement[3], initiated a grievance. Local 814 contended that Sotheby's discharge of Roberts violated the Agreement. Following the initiation of the grievance, Local 814, pursuant to Section 16(C) of the Agreement[4], demanded arbitration of the grievance under the Agreement.

On July 15, and 31, 1986, Arbitrator Walter L. Eisenberg, having been selected by the parties in accordance with the Rules of the American Arbitration Association, conducted a hearing. At the hearing both parties appeared and were represented by counsel. The question submitted to Eisenberg was as follows:

Was Kevin M. Roberts' discharge for just cause? If not, what shall be the remedy?

Stipulation, Ex. B at 1.[5]

Roberts, testifying at the hearing, repeated his denials of culpability. In his

---

**2.** Section 15 of the Agreement provides:

**SECTION 15.**
**DISCHARGE OF EMPLOYEES**

Causes for discharge by the Employer *shall include* but shall not be limited to: *dishonesty;* disobedience and/or insubordination; reporting for work under the influence of liquor, narcotics, or bringing intoxicants and/or narcotics into or consuming intoxicants or using narcotics in premises of the Employer; inefficiency and incompetence in the performance of allotted tasks; refusal to comply with the rules of the Employer.

Stipulation, Ex. A at Section 15, (emphasis added).

**3.** Section 16 of the Agreement provides, in pertinent part, as follows:

**SECTION 16.**
**GRIEVANCE PROCEDURES**

(A) A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding, or dispute. Any grievance arising between the Employer and the Union or an employee represented by the Union shall be settled in the following manner:

*Step 1.* The aggrieved employee or employees must present the greivance [sic] to the

Shop Steward.... If a satisfactory settlement is not effected with the foreman ... the Employee shall submit such grievance in writing to the Union[ ]....

*Step 2.* The [Union] Business Representative shall then take the matter up with ... the Employer....

*Step 3.* If the Employer fails to comply with any settlement of the grievance ... the Union has the right to take all legal and economic action to enforce its demands....

Stipulation, Ex. A Section 16.

**4.** Section 16(C) of the Agreement provides as follows:

(C) If no satisfactory settlement can be agreed upon, the parties shall select a mutually agreeable and impartial Arbitrator.... In the event they are unable to so agree, the matter shall be referred to the American Arbitration Association....

Stipulation, Ex. A at Section 16(C).

**5.** The Arbitrator's powers are spelled out under subsections (D) and (E) under Section 16 of the Agreement:

(D) The Arbitrator shall not have the authority to amend or modify this Agreement or

Award and Opinion, issued on or about September 6, 1986, Eisenberg rejected this testimony on credibility grounds. Stipulation, Ex. B at 8, 10. In addition, Eisenberg found specifically that: Roberts caused the damage to the scroll by opening the package with a sharp implement, Stipulation, Ex. B at 7–8; Roberts had held the scrolls in his office for several days after which he attempted to deceive the Company about the damage by rewrapping the Tiger Hill scroll and passing the eight scrolls on within Sotheby's for further handling, Stipulation, Ex. B at 4, 8–10; and Roberts had lied to Sotheby's in the course of its investigation by denying culpability for the damaged scroll. Stipulation, Ex. B at 11.

Eisenberg concluded, however, that, despite the seriousness of Roberts' failure to admit to damaging the Tiger Hill scroll, such behavior did not warrant his discharge. Eisenberg reasoned that accidental damage of property had not led to the discharge or even to the suspension of Sotheby's employees in the past. Moreover, Eisenberg relied on the fact that Roberts had no previous disciplinary record. Accordingly, Eisenberg converted Sotheby's discharge into a suspension without backpay or benefits, from the time of the discharge to the rendering of his Award and Opinion. Stipulation, Ex. B at 11–12.

Since receipt of the Award and Opinion on or about September 12, 1986, Sotheby's has failed and refused to comply with the terms of the Award and Opinion, contending that Eisenberg exceeded his authority under the Agreement. As a result, the instant action was commenced.

## DISCUSSION

### A. The Standard for Reviewing Arbitration Awards

Federal substantive law is to be applied to an action seeking to confirm, modify or vacate a labor arbitration award. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). Under federal law, "[w]here parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievances the arbitration award is normally non-reviewable by a court." *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1048 (1st Cir.1977) (citations omitted). "An arbitration award subject to judicial review would be neither final nor binding," and would therefore frustrate legislative policy. *Id.* at 1049; *accord Textile Workers Union of America, AFL–CIO, Local Union No. 1386 v. American Thread Co.*, 291 F.2d 894, 896–97 (4th Cir.1961). This general rule promotes judicial economy by fostering reliance on arbitration proceedings which provide fast, efficient and inexpensive relief to the parties involved without exhausting the time, energy and other resources of the courts. Accordingly, it is well settled that courts will "not set aside an arbitrator's award for mere errors of fact or law; and mistakes in the admission of evidence or misinterpretation of the contract giving rise to the arbitration [will] not vitiate the award." *American Thread, supra*, 291 F.2d at 896.

Their limited role notwithstanding, courts will review, and must vacate, an award in which the arbitrator "exceed[s] the limits of his contractual authority. If the arbitrator's award is not derived in some rational way from the collective bargaining agreement, it must be overturned. [Citation omitted]. In particular, where a clause in an agreement to arbitrate prohibits an arbitrator from adding to or modifying an agreement, additions or modifications to that agreement will be vacated." *American Federation of Television and Radio Artists, AFL–CIO v. Benton & Bowles, Inc.*, 627 F.Supp. 682, 686 (S.D.N.

establish new terms or conditions under this Agreement. The Arbitrator shall determine any question of arbitrability. In the event the position of the Union is sustained, the aggrieved party shall be entitled to all the benefits of this Agreement which would have accrued to him had there been no grievance.

(E) Both parties agree to accept the decision of the Arbitrator, as final and binding. If the Employer fails to comply with the award of the Arbitrator ·..., the Union has a right to take all legal and economic action to enforce compliance.
Stipulation, Ex. A at Section 16(D)(E).

Y.1986) (footnote and citation omitted). Moreover, if an arbitrator "disregard[s] ... plain and unambiguous provisions" of the collective bargaining agreement then the arbitrator has exceeded his authority and the "courts have no choice but to refuse enforcement of the award." *Detroit Coil Co. v. Intern. Assn. of M. & A. Workers, Lodge # 82*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). Thus, as the Sixth Circuit stated:

> [W]hile an arbitrator has considerable latitude, his powers are not unlimited in the resolution of labor disputes. The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions. [Citations omitted]. Furthermore, "[i]f the arbitrator's award has deviated from the plain meaning of a labor contract provision, it must find support in the contract itself or in prior practices demonstrating relaxation of the literal language." [Citation omitted]. Accordingly, it is the duty of the courts to ascertain whether the arbitrator's award is derived in some rational way from the collective bargaining agreement.

*Id.* at 579 (citation omitted).

B. *Sotheby's has Satisfied its Burden of Demonstrating Adequate Grounds to Vacate the Award*

■ In the instant action, Sotheby's contends that Arbitrator Eisenberg, in failing to sustain Sotheby's discharge of Roberts, acted in excess of his authority under the Agreement. Sotheby's argues that Eisenberg found that Roberts' behavior constituted "dishonesty" under the terms of the Agreement's Discharge of Employees clause. In particular, this "dishonesty" consisted of Roberts' failure to admit he caused the damage to the scroll, his failure to report the damage as he was obliged to do, his attempt to deceive Sotheby's by rewrapping the damaged scroll and passing it on within Sotheby's in an effort to cover up his responsibility, and his lying to Sotheby's management about the damage when it sought to investigate the matter. Yet, Sotheby's notes, that, contrary to these express findings and with complete disregard for the plain terms of the Agreement, Eisenberg failed to sustain Sotheby's discharge of Roberts. Instead—in what Sotheby's describes accurately as a *non sequitur*—Eisenberg held that Sotheby's failure to discharge employees in the past for accidental damage, conjoined with Roberts' unblemished disciplinary record, made the discharge unwarranted.

Sotheby's, therefore, insists that this case provides a clear example of an arbitrator exceeding his authority under an agreement because Eisenberg completely ignored the discharge for cause provision in the Agreement. Instead, Eisenberg confused or misunderstood the grounds upon which the discharge was based. Accordingly, Sotheby's concludes that Eisenberg did not confine himself, as he must, to "interpretation and application of the collective bargaining agreement", but instead chose "to dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Local 814, on the other hand, suggests that Sotheby's contentions are merely attempts to disguise Sotheby's disagreement with Eisenberg's interpretation of the Agreement and that, therefore, the Award must be confirmed. Local 814 argues that the Award is based on a reasonable interpretation of the Agreement and/or reasonable construction of the terms of the Agreement. Moreover, Local 814 maintains that, because an arbitrator is not required to provide the parties with the reasons for an award, this Court is authorized and required to infer reasonable interpretations *from* the Award that would provide a rational and valid basis *for* the Award. Specifically, Local 814 asks that the Court infer from the Award that Eisenberg narrowly defined the term "dishonesty" to refer exclusively to acts of theft, P. Memo. at 15, thereby rendering Section 15 of the

Agreement inapplicable to the acts committed by Roberts. Plaintiff also asks the Court to infer that, in implicitly deeming Section 15 inapplicable, Eisenberg then invoked necessarily the general "just cause" clause, Section 18 of the Agreement, as the basis for his Award. Local 814 maintains that such an interpretation provides a reasonable basis for confirming the Award.

In support of its argument, Local 814 relies on *Enterprise, supra,* 363 U.S. at 598, 80 S.Ct. at 1361. In *Enterprise,* the Supreme Court reversed a Fifth Circuit Court of Appeals' vacation of an arbitration award. In doing so, the Supreme Court held that a contract will not render an award invalid unless the award conflicts with any possible interpretation of the agreement. In particular, the Court stated that:

> The opinion of the arbitrator in this case, as it bears upon the award of back pay beyond the date of the agreement's expiration and reinstatement, is ambiguous. It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of the submission. Or it may be read as embodying a construction of the agreement itself....

*Id.* at 597–98, 80 S.Ct. at 1361. Moreover, the Supreme Court noted that:

> A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award.... Moreover, we see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration. It is not apparent that he went beyond the submission.

*Id.* at 598, 80 S.Ct. at 1361.

■ *Enterprise* stands for the proposition that an arbitrator is not required to explain the rationale for his award and that any ambiguity in the award must be resolved, whenever possible, in a manner supportive of the confirmation of said award. *Enterprise,* however, does not authorize the confirmation of an award when an arbitrator *does* provide the rationale underlying his award and said rationale indicates a disregard for the arbitrator's own finding of facts and/or disregard for unambiguous terms of the collective bargaining agreement. Accordingly, *Enterprise* is easily distinguishable from the instant action.

In this case, Arbitrator Eisenberg was quite explicit in providing the parties with his findings of fact and the reasons for his Award. He noted that Sotheby's "based its discharge action on Roberts' failure to report the damage and his alleged attempt to conceal what he had done by re-wrapping the damaged scroll and sending it on to [Sotheby's] Central Receiving Department." Stipulation, Ex. B. at 3. Eisenberg also stated that, "as to the Union's testimony and Exhibits with reference to other instances of damage to or loss of art objects on [Sotheby's] premises, I find that these do not relate directly to the instant case. Those other instances apparently involved accidental damage to or loss of valuable items where there was no attempt to conceal the damage or loss and no denial by the individual found to be responsible for it." *Id.* at 9. Then, despite his acknowledgement that Roberts was not discharged because of merely damaging the scroll, Eisenberg decided that because similar damage to a work of art had not in the past caused the discharge of an employee, Roberts should not be discharged for his damaging the scroll. Eisenberg further concluded that the concealment of the damaged scroll did warrant a severe disciplinary penalty short of discharge, and he thereby suspended Roberts without pay or benefits.

The express language of the Award clearly reveals Eisenberg's abuse of his authority under the Agreement. Although *Enterprise* permits courts to uphold an award where there exist plausible inferences by which the award can be validated, here, Eisenberg's own words militates against the drawing of such inferences; Eisenberg's own Award explicitly contra-

dicts Eisenberg's own findings of facts. Accordingly, *Enterprise* is inapposite.

Plaintiff also argues that "the court can actually create a valid reason for the ruling of an arbitrator, as long as there is no explicitly inappropriate basis for the award stated in the award." P. Memo. at 14. Plaintiff cites *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 891 (2d Cir.1982) and *Meyers v. Parex, Inc.*, 689 F.2d 17, 18 (2d Cir.1982) in support of this argument. After examining these cases, however, the Court finds that plaintiff's faith is misplaced.

In *Ottley*, the Second Circuit refused to set aside an arbitrator's award reinstating a discharged employee even though the dispute was not presented to the arbitrator in a timely fashion. The *Ottley* Court based its decision on the fact that "[t]he arbitrator could well have found that a defense based on section 8H [of the agreement], which is so closely analogous to a statute of limitations defense, was waivable, and [that the arbitrator] implicitly held by his refusal to reconsider the arbitration, that [the employer] had waived the objection in this case." 688 F.2d at 891. Furthermore, the Second Circuit noted that it could not "say that there was no 'colorable justification for the outcome reached.'" *Id.* at 891 (quoting *Advance Publications, Inc. v. Newspaper Guild Local 3*, 616 F.2d 614, 618 (2d Cir.1980)).

The instant action is distinguishable from *Ottley* in that, here, there is no indication in the Award that Eisenberg considered either Section 15 or Section 18 of the Agreement. Instead, the Award reveals clearly that Eisenberg inappropriately based his Award on the fact that no employee had ever been discharged by Sotheby's for the damage of property. Additionally, the Second Circuit in *Ottley*, on the other hand, did not *create* a valid reason for the award. Rather, the *Ottley* Court inferred from the arbitrator's words and actions the basis upon which his award could be properly grounded.

Plaintiff's reliance on *Myers* is similarly unfounded. In *Myers*, part-time employees of the defendant refused to cross a picket line, thus, missing work. When they later attempted to return to work, the employees learned they had been discharged and replaced. Thereupon, the employees' union insisted that the matter be arbitrated. The arbitrator reinstated the employees based on three provisions of the collective bargaining agreement he deemed controlling. The arbitrator's award was confirmed by the District Court. The District Court's confirmation of the award was affirmed by the Second Circuit. In so holding, the Second Circuit noted that although "the arbitrator's opinion explaining his award is not unambiguous, *it is evident* that he considered the replacement of the part-time employees to be a discharge within the meaning of section 5 [of the collective bargaining agreement], and it is *fairly inferable* that he construed the requirement of 'notice' to mean not merely advance warning that a discharge will occur but also advance warning of what would constitute a ground for discharge." 689 F.2d at 18 (emphasis added).

Nowhere in *Myers*, however, does the Second Circuit state that courts can create from thin air valid reasons for the ruling of arbitrators. In fact, the *Myers* Court's inferences were not only consistent with the arbitration award, but were "evident" nd "fairly inferable" from the award. In the instant action, however, what is clear is that Eisenberg disregarded his own findings of facts, disregarded express provisions of the Agreement, and "in an obvious effort to find some semblance of support for his [A]ward", *American Thread, supra*, 291 F.2d at 901, based his Award on findings which were beyond the scope of his authority. Accordingly, the Court finds that *Meyers* also fails to support plaintiff's argument for confirmation of the Award.

Plaintiff's last cotention is that "unless Sotheby's can establish that the Award conflicts with any permissible interpretation of the Agreement, [Sotheby's] assertion that the [A]ward disregards the Agreement is meritless." P. Memo. at 5. Local 814 claims that the inferences it requests the Court to draw are permissible interpretations of the Agreement. In support of

this argument, Local 813 relies on *Arco-Polymers, Inc. v. Local 8-74*, 671 F.2d 752 (3rd Cir.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982) and *Russell Engineering Works, Inc., v. UAW*, 113 LRRM 2434 (D.Mass.1982). This Court, however, declines to reach the question of whether or not Eisenberg could permissibly have defined narrowly the term "dishonesty" to refer to theft, and/or determined properly that the general "just cause" provision in Section 18 of the Agreement governed the specific discharge clause found in Section 15 of the Agreement. This Court has already determined that the express terms of the Award conflict with such inferences.

### CONCLUSION

The Award is hereby vacated. The clerk will enter judgment of remand to Arbitrator Eisenberg to proceed in accordance with this opinion.

SO ORDERED.