MEMORANDUM OPINION AND ORDER
 

 SPRIZZO, District Judge.
 

 Pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(c), and 9 U.S.C. § 10, plaintiff Wackenhut Corporation (“Waekenhut”) filed the instant action seeking vacatur of an arbitration award. Defendants International Union, United Plant Guard Workers of America, Amalgamated Local 515 counterclaimed to enforce that arbitration award. Pursuant to Federal Rule of Civil Procedure 56(c), defendants move for summary judgment, and plaintiff cross-moves for summary judgment.
 

 BACKGROUND
 

 Plaintiff Waekenhut is a Florida corporation which contracted to provide security services at a Consolidated Edison Company (“Con Ed”) nuclear power facility located in Indian Point, New York (the “facility”). Compl. ¶ 2. Defendants International Union, United Plant Guard Workers of America and Amalgamated Local 515 (collectively, the “union”) are local and international chapters of the union which represents security officers.
 
 Id.
 
 ¶ 3. In 1990, Waekenhut and the union entered into a collective bargaining agreement (“CBA”) governing the employment of all Waekenhut full-time and part-time security officers and watchpersons at the Indian Point facility from March 5, 1990 through March 7,1993.
 
 Id.
 
 ¶ 6. Pursuant to the CBA, Waekenhut and the union agreed to arbitrate employee disputes concerning the terms of the agreement after the exhaustion of internal procedures.
 
 Id.
 
 ¶7; CBA, art. VII, § 6 at 11.
 

 Waekenhut maintains the security services at Indian Point. Affidavit of Adin C. Goldberg Sworn to August 5, 1994 (“Goldberg Aff.”) ¶ 3. However, Con Ed, as owner of the facility, ultimately controls all employee access to the facility pursuant to,
 
 inter alia,
 
 Nuclear Regulatory Commission (“NRC”) regulations.
 
 Id.
 
 As a result, all Waekenhut employees are subject to Con Ed’s decisions regarding site access and clearance.
 
 Id.
 

 On August 21, 1992, Con Ed learned of an alleged tampering with shotguns used by security personnel at the facility. Compl. ¶ 10. During an investigation of the incident, a Con Ed employee questioned Fernando T. Coelho, a security guard employed by Waekenhut at the facility.
 
 Id.
 
 Athough Con Ed never suspected Coelho of tampering with the shotguns, Coelho’s responses led Con Ed to conclude that he could not be trusted to perform his job properly. Goldberg Aff. ¶ 7.
 

 On August 22,1992, Con Ed revoked Coelho’s site access. Compl. ¶ 12. Because site access was a prerequisite to employment, the revocation effectively ended Coelho’s employment at the facility. Goldberg Aff. ¶¶ 11, 12. Thereafter, Waekenhut placed Coelho on suspension from the facility and unsuccessfully sought Con Ed’s reconsideration of the decision to revoke his site access. Compl. ¶ 12.
 

 On September 10, 1992, Waekenhut discharged Coelho pursuant to a provision of the CBA entitled “management rights,” which allowed Waekenhut to “relieve [an] employee[ ] from duty ... at client request.” CBA, art. Ill, § 1 at 3; Goldberg Aff. ¶ 8. Specifically, the CBA provides, in pertinent part:
 

 [included among management rights is the authority to administer and/or manage the Company’s business, including but not limited to the direction of the working force; the right to hire, discipline^] suspend or discharge employees for just cause, [and] to relieve employees from duty because of lack of work or at client request____
 

 CBA, art. Ill, § 1 at 3.
 

 The union filed a written grievance petition on behalf of Coelho which was thereafter
 
 *270
 
 denied by Waekenhut and submitted to arbitration. Goldberg Aff. ¶ 9. On May 18, 1993, Arbitrator Robert E. Light held a hearing in the Coelho matter. Opinion and Award of September 17,1993 (“Arb. Award”) at 2.
 

 On September 17, 1993, Arbitrator Light issued a decision holding that Wackenhut’s termination of Coelho violated the terms of the CBA. Arb. Award at 11, 13. The arbitrator awarded Coelho full back pay and benefits through the date of the arbitration award.
 
 Id.
 
 at 11. In addition, the arbitrator directed Waekenhut to renew its efforts to persuade Con Ed to reinstate Coelho’s security clearance and, failing that, to reinstate his employment at another facility in a “comparable employment within a reasonable geographic area.”
 
 Id.;
 
 Compl. ¶ 9.
 

 On December 15, 1993, Waekenhut filed the instant action seeking to vacate the arbitration award on the grounds that,
 
 inter alia,
 
 1) the arbitrator exceeded his authority under the CBA, and 2) the arbitrator improperly deviated from two prior arbitration decisions in rendering his opinion. Compl. ¶¶ 16-17, 26, 31, 39-40. As stated above, defendants counterclaimed to enforce the arbitration award on the basis that the award was properly rendered. Answer and Counterclaim. ¶ 55.
 

 For the reasons set forth below, the arbitrator’s award is confirmed to the extent that the arbitrator found Coelho’s termination to be improper. However, insofar as the arbitrator awarded Coelho back pay and benefits and ordered Waekenhut to extend an offer of comparable employment at a facility not covered by the arbitration agreement, the award is vacated.
 

 DISCUSSION
 

 Summary judgment is appropriate where “there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.” Fed.R.CivJP. 56(c).
 

 It is well established that “judicial review of an arbitration award is extremely limited.”
 
 Burns Int'l v. International Union, United Plant Guard Workers, Local 537,
 
 47 F.3d 14, 17 (2d Cir.1995). A party seeking to vacate an arbitration award must establish that the award does not “draw[] its essence from the collective bargaining agreement.”
 
 United Steelworkers v. Enterprise Wheel and Car Corp.,
 
 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Because an arbitrator “does not sit to dispense his own brand of industrial justice” and “is confined to interpretation and application of the collective bargaining agreement,”
 
 id.
 
 at 597, 80 S.Ct. at 1361, vacatur is required where an arbitrator “exceed[s] the limits of his contractual authority” or where the award “is not derived in some rational way” from the CBA
 
 Local 814, Int'l Bhd. of Teamsters v. Sotheby’s, Inc.,
 
 665 F.Supp. 1089, 1092 (S.D.N.Y.1987)(quoting
 
 American Fed’n of Television and Radio Artists v. Benton & Bowles, Inc.,
 
 627 F.Supp. 682, 686 (S.D.N.Y.1986));
 
 see also Detroit Coil v. International Ass’n of M. & A Workers, Lodge # 82,
 
 594 F.2d 575, 579 (6th Cir.),
 
 cert. denied,
 
 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).
 

 In determining whether an award draws its essence from the contract, the court must afford substantial deference to the decision of the arbitrator, who “need only explicate his reasoning under the contract ‘in terms that offer even a barely colorable justification for the outcome reached’ in order to withstand judicial scrutiny.”
 
 In re Marine Pollution Service, Inc.,
 
 857 F.2d 91, 94 (2d Cir.1988) (citation omitted);
 
 see also Andros Compania Maritima, S.A v. Marc Rich & Co.,
 
 579 F.2d 691, 704 (2d Cir.1978). The proper analysis is not whether the court would interpret the contract in the same maimer, but rather whether “the arbitrator exceeded his authority in making these interpretations.”
 
 Meyers v. Parex, Inc.,
 
 689 F.2d 17, 18 (2nd Cir.1982). “[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.”
 
 United Paperworkers Int'l Union v. Misco, Inc.,
 
 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987).
 

 
 *271
 
 In the instant case, the arbitrator’s determination that Wackenhut violated the CBA by terminating Coelho draws its essence from the CBA and therefore must be enforced. The management rights clause provides that management has “the right to ...
 
 discharge employees for just cause,
 
 [and] to
 
 relieve employees from duty
 
 because of lack of work or
 
 at client request.”
 
 CBA, art. Ill, § 1 at 3 (emphasis added). In light of that language, the arbitrator’s holding that the term “relieve from duty,” although not defined in the CBA, differs from “discharge” is sufficiently grounded in the terms of the CBA to withstand this Court’s limited judicial review. Indeed, to hold as Wackenhut contends, that relieving an employee from duty is tantamount to a discharge, would render the “just cause” provision redundant. Had the parties intended to equate the loss of security clearance with “just cause,” they could have provided to that effect in the CBA.
 

 The arbitrator’s interpretation is further supported by the contract provision relating to seniority. The CBA contains a detailed list of the instances in which an employee loses seniority, including discharge.
 
 See
 
 CBA, art. VIII, § 6 at 16. However, nowhere is “relief from duty at client request” listed as a basis for loss of seniority. It follows that where, as here, the arbitrator found — and the parties concede — that Waekenhut did not have just cause to discharge Coelho, Arb. Award at 11, the arbitrator’s determination that Wackenhut violated the CBA is properly grounded in the terms of the CBA and must be enforced.
 
 See Bums,
 
 47 F.3d at 17. In sum, the parties clearly manifested an intent that discharge and relief from duty were separate and distinct situations with different consequences to the employee.
 
 [1]
 

 The appropriateness of the remedy ordered by the arbitrator raises a more difficult issue. It is true that where “[t]he draftsmen [of the CBA] may never have thought of what specific remedy should be awarded to meet a particular contingency,” an arbitrator may under certain circumstances exercise remedial powers not expressly granted in the agreement.
 
 Enterprise Wheel & Car Corp.,
 
 363 U.S. at 597, 80 S.Ct. at 1361;
 
 see also Miller Brewing Co. v. Brewery Workers Local Union No. 9,
 
 739 F.2d 1159, 1163-64 (7th Cir.1984),
 
 cert. denied.
 
 However, an arbitrator’s power is nonetheless “derived from, and limited by, the collective bargaining agreement.”
 
 Barrentine v. Arkansas-Best Freight Sys., Inc.,
 
 450 U.S. 728, 744, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981);
 
 see also
 
 9 U.S.C. § 10(d). It follows that where, as here, the parties explicitly agreed that the arbitrator “cannot modify, amend, add to, detract from or alter the provisions,” CBA, art. VII, § 10 at 13, of the CBA, the arbitrator’s grant of a remedy which exceeds the terms of the CBA is clearly beyond the scope of the arbitrator’s power.
 
 [2]
 

 See Leed Architectural Products, Inc. v. United Steelworkers, Local 6674,
 
 916 F.2d 63, 66 (2d Cir.1980);
 
 see also Miller Brewing,
 
 739 F.2d at 1163-64;
 
 470 Stratford Holding Co. v. Local 32B-32J, Service Employees Int’l Union,
 
 805 F.Supp. 118, 122 (E.D.N.Y.1992);
 
 Teamsters Local 814,
 
 665 F.Supp. at 1092.
 

 Here, the arbitrator awarded Coelho back pay through the date of the arbitration award and directed Wackenhut to renew its
 
 *272
 
 attempts to convince Con Ed to reinstate his site clearance. Arb. Award at 11. Failing that, Arbitrator Light directed Wackenhut “to attempt to make an accommodation to [Coelho] with an offer of comparable employment within a reasonable geographical area.”
 
 Id.
 
 In the face of the evidence presented at the hearing indicating that Wackenhut may not have made good faith efforts to persuade Con Ed to reinstate Coelho’s clearance, the remedy requiring Wackenhut to renew those efforts draws its essence from the contract’s implied covenant of good faith and should be enforced.
 
 [3]
 

 See Vaca v. Sipes,
 
 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967) (duty of good faith imposed on employer and union to resolve disputes prior to arbitration).
 

 However, since the arbitrator clearly overstepped his authority in directing Wackenhut to reinstate Coelho to another facility not covered by the CBA and to pay Coelho back wages and benefits, that portion of the award must be vacated. The union concedes that the arbitrator’s order directing reinstatement at another facility is not enforceable.
 
 [4]
 
 In any event, that provision must be vacated because Wackenhut is not obligated to secure employment for a union employee outside the jurisdiction and scope conferred by the collective bargaining agreement, which is explicitly limited to the Indian Point facility. CBA, art. II, § 1 at 2-3. Indeed, even if Coelho had been relieved of duty and not improperly discharged, he would have had no right trader the CBA to reinstatement at another facility.
 

 Similarly, because Coelho would not have been entitled to pay or benefits even if Wackenhut had relieved him of duty without discharging him, the arbitrator’s award granting him back benefits as a remedy for improper discharge bestows a windfall upon him.
 
 See Miller Brewing,
 
 739 F.2d at 1164 (vacating arbitration remedy putting grievant in better position than he would have been in if there had been no violation of the CBA). This is especially true given that the parties specifically agreed that:
 

 Any employee who does not qualify or requalify under the State Licensing Laws or NRC who is subsequently declined licenses or
 
 any required clearances,
 
 etc., shall not be entitled to back pay if he or she is later reinstated because of subsequent permission or qualification by the Secretary of State or NRC Regulations.
 

 CBA, art. VII, § 13 at 14 (emphasis added).
 
 [5]
 

 The union argues that this provision establishes that if the parties had intended to deny back pay to an employee who was improperly discharged after having been relieved at client’s request, they could have incorporated a provision to that effect. That argument is unpersuasive because the parties did include a specific provision foreclosing that relief. Article VII, section 13 explicitly provides that back pay is unavailable where, as here, the
 
 *273
 
 employee is denied “any required clearances,” including Con Ed’s security clearance.
 
 [6]
 

 Wackenhut’s argument that the arbitrator exceeded his authority by failing to follow the holdings in two prior arbitration awards, the
 
 Weir
 
 award and the
 
 O’Neill
 
 award, must likewise be rejected. Arbitration awards do not have the same
 
 stare decisis
 
 effect as court judgments.
 
 See Connecticut Light & Power Co. v. Local 420, International Bhd. of Elec. Workers,
 
 718 F.2d 14, 20 (2d Cir.1983). Ordinarily, the fact that inconsistencies exist between prior arbitration awards is not a basis in and of itself to set aside an award.
 
 Id.
 
 In any event, even assuming,
 
 arguendo,
 
 that the Court had the power to vacate an award on that ground, it would be improvident to exercise that power here.
 

 First, it is not entirely clear that the
 
 Weir
 
 award is even inconsistent, especially in view of this Court’s modification of the award as set forth above. The
 
 Weir
 
 award and the instant award consistently interpret the terms of the CBA to provide that an employee can be indefinitely relieved of duty at client request absent just cause and that an award directing Waekenhut to place the relieved employee at another facility transcends the scope of the CBA Waekenhut argues that the rationale in the
 
 Weir
 
 award was inconsistent to the extent that the arbitrator in
 
 Weir
 
 held that relief from duty was “tantamount to discharge.” However, in that ease the employee was properly discharged because the employee was guilty of the misconduct which led to his discharge. Therefore, the language relied upon was not essential to the result reached because it made no difference to the outcome whether the employee was regarded as “discharged” or “relieved of duty.”
 

 With regard to the
 
 ONeill
 
 award, it is significant that Waekenhut failed to cite that award to the arbitrator and therefore should not be permitted to rely on that case as a basis for challenging the award in the instant action. Nor does the fact that Arbitrator Light decided the
 
 ONeill
 
 award compel a different result. It is not incumbent upon an arbitrator to ferret out a prior arbitration award not brought to his attention by the litigant. This is especially true given that Waekenhut has shown no reason for failing to cite the
 
 ONeill
 
 decision, which they now argue is relevant and controlling.
 

 In any event, the only inconsistency between
 
 O’Neill
 
 and the instant arbitration award is the fact that in
 
 O’Neill,
 
 the arbitrator held that an employee relieved at client request was not entitled to back pay. However, the Court has already vacated that portion of the award, and thus the award as modified is no longer inconsistent with the
 
 ONeill
 
 decision.
 

 Even if this were a case where inconsistencies exist, it is clear that all three awards draw their essence from the contract.
 
 Connecticut Light,
 
 718 F.2d at 21 (citing
 
 United Steelworkers v. Enterprise Wheel & Car Corp.,
 
 363 U.S. at 597, 80 S.Ct. at 1361). As noted above, an arbitration award draws its essence from the CBA if an arbitrator “explicate[s] his reasoning under the contract ‘in terms that offer even a barely colorable justification for the outcome reached.’”
 
 In re Marine Pollution Service, Inc.,
 
 857 F.2d 91, 94 (2d Cir.1988) (citation omitted).
 

 Tested by that precept, although the instant award and the
 
 Weir
 
 award interpret the meaning of “relieved of duty at client request” differently, both awards are properly grounded in the terms of the CBA and therefore draw their essence from the contract. This is especially true where, as here, the CBA is silent with respect to what, if any, precedential weight must be attributed to previous awards, and the CBA does not explicitly require an arbitrator to follow a previous award.
 
 See Fournelle v. N.L.R.B.,
 
 670 F.2d 331, 344 n. 22 (D.C.Cir.1982);
 
 Hotel Ass’n v. Hotel & Restaurant Employees Union, Local 25,
 
 963 F.2d 388, 390 (D.C.Cir. 1992);
 
 Local No. 199, International Bd. of Elec. Workers, v. United Tel. Co.,
 
 738 F.2d 1564, 1571 (11th Cir.1984);
 
 New Orleans S.S. Ass’n v. General Longshore Workers,
 
 626
 
 *274
 
 F.2d 455, 468 (5th Cir.1980),
 
 aff'd,
 
 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982).
 

 CONCLUSION
 

 For the reasons set forth above, the arbitration award is enforced insofar as the arbitrator held that Wackenhut violated the CBA by discharging Coelho and directed Wackenhut to renew its efforts to persuade Con Ed to reinstate his security clearance and vacated insofar as the arbitrator granted reinstatement and back pay and benefits. The Clerk of Court shall enter judgment accordingly and close the above-captioned action.
 

 [1]
 

 . After commencing the instant arbitration, the parties entered into negotiations over renewal of the CBA. The fact that during these negotiations, the union unsuccessfully sought to eliminate from the CBA the provision for relief at client request does not compel a different conclusion. Although these negotiations may be relevant to the parties’ intent in entering into the subsequent CBA, they are not dispositive of the parties’ intent as to the CBA at issue herein. See
 
 Metropolitan Edison Co. v. NLRB,
 
 460 U.S. 693, 709-10, 103 S.Ct. 1467, 1478, 75 L.Ed.2d 387 (1983) (party’s failure to negotiate change in CBA after two adverse arbitration awards does not establish party’s acquiescence to arbitrator’s adverse interpretation of CBA).
 

 [2]
 

 . Specifically, Article VII, section 10 of the CBA provides that:
 

 [t]he arbitrator's authority shall be limited to finding a direct violation of the express purpose of the Agreement provision or provisions in question rather than an implied or indirect purpose. The arbitrator cannot modify, amend, add to, detract from or alter the provisions of [the CBA], nor substitute his judgment for that of management.
 

 CBA, art. VII, § 10 at 12-13.
 

 [3]
 

 . For example, at arbitration, the union presented evidence that Wackenhut discontinued Coelho's insurance on August 31, 1992, several days before Wackenhut met with Con Ed officials regarding reinstatement of Coelho's security clearance. Arb. Award at 3, 8.
 

 [4]
 

 . Specifically, the union took the position that:
 

 This portion of the Award does not obligate Wackenhut to place Mr. Coelho at a position outside the nuclear facility; simply, it is a strong suggestion to it that if such a position is available, it would be a wise resolution of the issues to do so. In the event that Wackenhut is unable or unwilling to make such an accommodation, the Arbitrator retained jurisdiction for [nine months] to allow the parties to come back to him to discuss further the appropriate remedy.
 

 Union's Mem. in Opp’n. to Wackenhut's Mot. for Summ.J. at 13-14;
 
 see also
 
 Def. UPGWA’s Suppl.Br. at 8.
 

 [5]
 

 . The union argues that the remedy directing Wackenhut to grant back pay and benefits and to seek reinstatement of Coelho’s security clearance draws its essence from the contract because that remedy must reflect the arbitrator's implicit conclusion that Wackenhut initially failed to seek reinstatement of Coelho’s security clearance in good faith, as the union asserted at arbitration. However, even if accepted, that argument does not support the remedy ordered by the arbitrator. Even if all good faith efforts had been made to reinstate him by changing the client's mind, Coelho's right to back pay would not be affected. Although it is true that had he been reinstated, he would have worked and received his wages, the arbitrator had no contractual power to order Wackenhut to grant him back pay when he had
 
 not worked,
 
 since the clear language of the CBA foreclosed that relief even when an employee was subsequently reinstated.
 

 [6]
 

 . Thus, even if the CBA prohibits Waekenhut from terminating Coelho’s employment at client request absent just cause, the CBA still provides no remedy for a violation thereof.