126 F.3d 29
 156 L.R.R.M. (BNA) 2312, 134 Lab.Cas. P 10,063
 The WACKENHUT CORPORATION, Plaintiff-Appellee-Cross-Appellant,
v.
AMALGAMATED LOCAL 515 and International Union, United Plant
Guard Workers of America (UPGWA),
Defendants-Counter-Claimants-Appellants-
Cross-Appellees.
 Nos. 1440, 1606, Dockets 96-9320, 96-9370.
 United States Court of Appeals,
Second Circuit.
 Argued May 5, 1997.
Decided Sept. 11, 1997.
 
 Scott A. Brooks, Detroit, MI (Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, P.C., of counsel), for Defendants-Counter-Claimants-Appellants-Cross-Appellees.
 Adin C. Goldberg, New York City (Epstein Becker & Green, P.C., of counsel), for Plaintiff-Appellee-Cross-Appellant.
 Before FEINBERG, OAKES, and LEVAL, Circuit Judges.
 OAKES, Senior Circuit Judge:
 
 
 1
 Plaintiff-Appellee-Cross-Appellant, The Wackenhut Corporation ("Wackenhut" or the "employer"), provides, pursuant to a long-term contract, security services for the Consolidated Edison ("ConEd") nuclear facility at Indian Point, New York. Amalgamated Local 515 of the United Plant Guard Workers of America (the "Union") is the certified bargaining representative of Wackenhut's security officers at the Indian Point facility under a collective bargaining agreement ("CBA") between the Union and Wackenhut.
 
 
 2
 The present dispute arises from the termination of a Wackenhut employee, Fernando T. Coelho, who was a security guard at the Indian Point facility. On August 21, 1992, Coelho was questioned by a ConEd official about the vandalism of some shotguns kept at Indian Point. Coelho, who was not suspected of the tampering, was asked what he would do if he knew who was responsible for the incident. Though there is some dispute over exactly what Coelho said in response, all parties agree that he indicated he might first consult with the Union before reporting his suspicions to ConEd. This response precipitated a loss of confidence in Coelho on the part of ConEd, which promptly revoked Coelho's access clearance to the Indian Point facility. Since a security guard who is unable to enter the site without an escort is of little value, Coelho could no longer perform his job with Wackenhut.
 
 
 3
 The CBA governing Coelho's employment covers only the Indian Point facility, and Wackenhut did not place him at another site. On August 22, Wackenhut suspended Coelho and nine days later discontinued his health insurance coverage. On September 10, Wackenhut discharged Coelho. The Union then filed a grievance claiming that Coelho's discharge violated the CBA.
 
 
 4
 When the grievance reached arbitration, the parties selected Arbitrator Robert Light to hear the dispute. On September 17, 1993, after a hearing and with the benefit of post-hearing briefs, Arbitrator Light issued his decision and award finding that Wackenhut violated the CBA by discharging Coelho without just cause. The award granted the following relief: (a) Wackenhut was to pay Coelho compensation and benefits up to the date of the award less any earnings from the period; (b) Wackenhut was to renew its efforts to have ConEd restore Coelho's site clearance; (c) failing (b), Wackenhut was "to attempt to make an accommodation to the grievant with an offer of comparable employment within a reasonable geographic area"; and (d) the arbitrator retained jurisdiction for a period of nine months on the issue of compliance with the award.
 
 
 5
 Wackenhut moved, pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(c) and 9 U.S.C. § 10, to vacate the award. The Union counter-claimed to enforce the award in full. On cross-motions for summary judgment, the district court vacated parts (a) and (c) of the award: the back pay up until the date of the award, and the requirement that the employer "attempt to make an accommodation to [Coelho] with an offer of employment at another site." Wackenhut Corp. v. United Plant Guard Workers of America, 939 F.Supp. 267, 272-73 (S.D.N.Y.1996). The district court, however, rejected Wackenhut's main argument--one it continues to advance on appeal--that there was no violation of the CBA, because the employer, at client request, may relieve an employee from duty without any cause at all. Id. at 271. We have jurisdiction under 28 U.S.C. § 1291.
 
 Discussion
 
 6
 We review a district court decision upholding or vacating an arbitration award de novo on questions of law and for clearly erroneous findings of fact. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). We first address Wackenhut's cross-appeal to vacate the entire award, before turning to the Union's objections to the district court's vacatur of portions of the award.
 
 
 7
 A. Wackenhut's cross-appeal to vacate the entire award.
 
 
 8
 This court recently reiterated the high degree of deference afforded to arbitrators. See Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199, 116 F.3d 41 (2d Cir.1997). Saint Mary Home explained, "[t]he principal question for the reviewing court is whether the arbitrator's award draws its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice." Id. at 44 (citations and internal quotations omitted). See also Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981); DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818 (2d Cir.1997). Under this standard, we have said that an arbitration award must be upheld when the arbitrator "offer[s] even a barely colorable justification for the outcome reached." Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir.1978); see Stotter Div. of Graduate Plastics Co. v. District 65, 991 F.2d 997, 1000 (2d Cir.1993). The contractual theory of arbitration, which is reflected in these decisions, requires a reviewing court to affirm an award it views as incorrect--even very incorrect--so long as the decision is plausibly grounded in the parties' agreement.
 
 
 9
 Wackenhut argues that the finding of a violation of the CBA conflicts with the employer's express rights under the agreement. The CBA, at article III (Management Rights ), section 1, gives management the right to "discipline[,] suspend or discharge employees for just cause" and to "relieve employees from duty ... at client request." The relationship between these two powers is, however, not clearly defined in the CBA. In the employer's view, the power to relieve employees from duty at the client's request permits the employer to terminate an employee who loses site clearance without just cause.
 
 
 10
 Wackenhut also emphasizes article VII (Grievance and Arbitration Procedure ), section 10: "[t]he arbitrator's authority shall be limited to finding a direct violation of the express purpose of the [CBA] provision or provisions in question rather than an implied or indirect purpose. The arbitrator cannot modify, amend, add to, detract from or alter the provisions of [the CBA], nor substitute his judgment for that of management." Wackenhut argues that the award and the decision of the district court effectively added a "just cause" provision to its power to relieve an employee from duty at client request, and that such an addition to the terms of the CBA violates the above-quoted limitation on the power of arbitrators. The employer's argument, however, overlooks the language and the thrust of the arbitration decision in this case.
 
 
 11
 Arbitrator Light considered and rejected Wackenhut's argument that the CBA permitted the termination of Coelho without just cause as an exercise of the employer's power to relieve workers from duty at client request. That argument rests upon a reading of the terms "discharge" and "relie[f] from duty" in the "Management Rights" section of the CBA as effectively equivalent and interchangeable. We cannot say that the arbitrator's reason for rejecting the employer's argument is without basis in the CBA. The decision-award explained:
 
 
 12
 Having accepted the grievant's total blamelessness in this matter, Wackenhut would have us hold that it is within its authority "to relieve employees from duty because of lack of work or at client request" and that such language, in effect, authorizes or allows [Wackenhut] to equate relieving someone from duty as being the equivalent of terminating that employee with no further obligation to that individual. The contract does not say that and I will not hold that it does.
 
 
 13
 The arbitrator had ample basis in the CBA to interpret relief from duty as effectively distinct from discharge, most notably in the "Management Rights" section, which uses different terms for the two powers. The arbitrator also found evidence in Article VIII, section 6, that the parties intended that the two powers be distinct. That section lists eight ways, including "[d]ischarge for just cause," by which an employee may lose seniority; relief from duty is not one of them. In at least this respect, the CBA indicates that the parties did not intend that relief from duty have consequences as grave for the employee as discharge.
 
 
 14
 We reject Wackenhut's argument that an arbitrator has a duty to follow arbitral precedent and that failure to do so is reason to vacate an award. We note that prior statements of this and other circuit courts indicate that inconsistent awards will ordinarily be upheld where they are both grounded in the collective bargaining agreement. See Connecticut Light and Power Co. v. Local 420, International Brotherhood of Electrical Workers, 718 F.2d 14, 20-21 (2d Cir.1983) (discussing decisions of other circuits). The role of the doctrine of stare decisis in arbitration is not raised by this case, however, because, as the district court found, one of the two awards Wackenhut claims is in conflict with the present award was not even called to the attention of the arbitrator, see Wackenhut, 939 F.Supp. at 273, and the other is distinguishable as the employer in that case thought that its client had good reason to revoke the employee's site clearance.
 
 
 15
 We therefore reject the arguments raised by Wackenhut's cross-appeal.
 
 
 16
 B. The Union's appeal to reinstate the portions of the award vacated by the district court.
 
 
 17
 1. Back pay.
 
 
 18
 The district court reversed the back-pay order for two reasons. First, "because Coelho would not have been entitled to pay or benefits even if Wackenhut had relieved him of duty without discharging him, the arbitrator's award granting him back benefits as a remedy for improper discharge bestows a windfall upon him." Wackenhut, 939 F.Supp. at 272 (citation omitted). Second, the district court read a provision in the CBA expressly to prohibit the grant of back pay where the employee has been denied access. Id. at 272-73. We do not think that either reason warranted vacatur of the award.
 
 
 19
 While we agree that the district court's first line of reasoning, that back pay bestows a windfall upon Coelho, may have permitted the arbitrator to interpret the CBA to disallow an award of back pay to Coelho, we do not find it adequate to upset the award under the very deferential standard of review applied to labor arbitrations. Although common sense may inform us that Coelho would not have been entitled to pay or benefits if Wackenhut had relieved him of duty without discharging him, determining the meaning and material effect of relief from duty, as opposed to discharge, is precisely the kind of contractual interpretation that the parties charged the arbitrator to perform. Furthermore, it is not clear that the award bestows a windfall at all. Coelho was awarded back pay up to the date of the arbitration award, but not ongoing pay beyond that date. The award thus permitted Coelho to be relieved from duty without pay, as long as Wackenhut was asserting good faith efforts to have Coelho reinstated. Thus, the back pay appears to have been granted in compensation for the employer's failure to make good-faith efforts to have Coelho's site clearance reinstated. By awarding back pay during the period in which the arbitrator implicitly found Wackenhut to have acted in bad faith, the period up to the award, the arbitrator merely gave Coelho the benefit of any doubts regarding what would have occurred had Wackenhut not violated the CBA. So interpreted, the back-pay remedy did not bestow a windfall on Coelho, but put him in the position he might have been in had Wackenhut taken appropriate action on his behalf in the first place.
 
 
 20
 The reversal of the back-pay order was also based on article VII, section 13, of the CBA, which restricts the relief an arbitrator may grant under specified circumstances. This provision, however, can fairly be read as applying to circumstances other than those Arbitrator Light confronted. Section 13 provides:
 
 
 21
 Any employee who does not qualify or requalify under the State Licensing Laws or NRC who is subsequently declined licenses or any required clearances, etc., shall not be entitled to back pay if he or she is later reinstated because of subsequent permission or qualification by the Secretary of State or NRC Regulations.
 
 
 22
 The district court read the phrase "any required clearances" in isolation, so that it applied to Coelho. As the Union points out on appeal, however, "[a]ny employee who does not qualify or requalify under the State Licensing Laws or NRC who is subsequently declined licenses or any ... clearances" can be read together as restricting application of the provision to cases in which the revocation is a consequence of the employee's failure to qualify under state or federal law. So construed, section 13 makes sense: If an employee fails a test and loses her license, she, not the Company, must bear the cost of her loss of site clearance. Wackenhut does not have to pay for its employees' failure to maintain their professional qualifications under applicable law.
 
 
 23
 In this case, the arbitrator would have had to call upon an implied or indirect purpose of section 13 in order to find that it applied to Coelho. Coelho did not fail to meet a qualification provided by law. It is true that federal law gives ConEd the power to revoke site clearance at its discretion. See 10 C.F.R. § 73.56(a)(1)-(4) (1997). But, if ConEd revoked Coelho's clearance arbitrarily, it is difficult to identify any qualification that Coelho failed to meet. Nor does it make sense that he should, in that case, shoulder the cost of suspension as in that class of cases clearly covered by section 13, i.e., guards who fail a test. Moreover, Coelho was not reinstated "because of subsequent permission or qualification by the Secretary of State or NRC Regulations." Thus, although section 13 might be read to impliedly cover this case, both its language and apparent purpose permit another construction. The absence of another remedy-limiting provision specifically addressing decisions of the client to revoke site clearance also suggests that back pay might be appropriately awarded under some circumstances. In short, the award of back pay does not fall within the express prohibition of section 13, and we cannot say that the back-pay remedy fails to draw its essence from the rest of the CBA.
 
 
 24
 2. Reinstatement at another facility.
 
 
 25
 The district court apparently understood the award to order the employer to find Coelho employment at another facility. Wackenhut, 939 F.Supp. at 272. We agree that, if Arbitrator Light had ordered the company to reinstate Coelho at another facility not covered by the CBA, we would face a serious question as to whether the remedy was ultra vires. But see BPS Guard Services v. International Union of United Plant Guard Workers, Local 228, 45 F.3d 205, 210 (7th Cir.1995) ("We see no reason why [an order reinstating the employee to a position not covered by the CBA] would not be within the arbitrator's authority where the particular job from which the employer had wrongfully discharged the employee was no longer available.").
 
 
 26
 Strictly speaking, however, the arbitrator did not order Wackenhut to find Coelho employment at another facility outside the CBA, but only ordered Wackenhut to attempt to make an accommodation to Coelho by doing so. This relief, like the back pay, may have been a response to the Union's assertion that Wackenhut never made a good faith effort to have Coelho's site clearance restored in the first place. As such, the award merely explicates what the duty to resolve disputes in good faith specifically requires in this instance, and is therefore an interpretation of, and not an addition to, the CBA. This portion of the relief did not, therefore, overstep the permissible authority of Arbitrator Light under the CBA.
 
 Conclusion
 
 27
 The portion of the district court's judgment vacating the arbitration award is reversed, and the arbitration award is affirmed in full.