NEW YORK STATE ELECTRIC AND GAS CORPORATION, Plaintiff,

v.

SYSTEM COUNCIL U–7 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant.

No. 3:04CV194FJSDEP.

United States District Court,
N.D. New York.

Aug. 4, 2004.

Hinman, Howard & Kattell, LLP (James S. Gleason, Esq., of Counsel), Binghamton, NY, for Plaintiff.

Creighton, Pierce & Johnsen (Catherine Creighton, Esq., of Counsel), Buffalo, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiff filed its complaint on February 23, 2004, requesting that this Court vacate an arbitration award and enjoin enforcement of the award under 29 U.S.C. § 185.[1] Defendant counterclaimed and sought interest, fees, and backpay, asserting that Plaintiff has violated the collective bargaining agreement ("CBA") between the parties by refusing to comply with the arbitration award.

Presently before the Court is Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant also seeks attorneys' fees on the ground that

---

1. Section 185 provides that

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

 29 U.S.C. § 185.

2. The Court also provided the parties with an opportunity to submit additional briefing on the issue of backpay.

3. The relevant provision of Plaintiff's Code of Conduct ("Code") states that Plaintiff "strictly prohibits acts of physical intimidation, assaults or threats of violence by employees." *See* Energy East Code of Conduct, Exhibit

Plaintiff's complaint is frivolous. The Court heard oral argument in support of, and in opposition to, these motions on April 23, 2004, and reserved decision at that time.[2] The following constitutes the Court's written decision with regard to the pending motions.

## II. BACKGROUND

Plaintiff is a New York corporation headquartered in Kirkwood, New York. Defendant has represented Plaintiff's production and clerical employees since the 1950s; the most recent CBA between the parties is effective from July 1, 2000, through June 30, 2005.

On January 30, 2003, Plaintiff terminated Stephen Brzezinski, a production employee. Plaintiff stated that it terminated Mr. Brzezinski because he violated Plaintiff's Code of Conduct; more specifically, Mr. Brzezinski repeatedly expressed a desire to harm certain managerial and supervisory employees at Plaintiff's facility.[3] Defendant grieved the termination on Mr. Brzezinski's behalf; the parties could not reach an agreement and proceeded to arbitration on December 4, 2003.[4]

---

"B" to Complaint, at 9. The Code further states that "[e]mployees who violate law and regulations, or [Plaintiff's] Code of Conduct, will be subject to disciplinary action, up to and including discharge ...." *See* Opinion and Award of Arbitrator Stuart M. Pohl ("Pohl Award"), Exhibit "C" to Complaint, at 3.

4. Article XVII of the parties' CBA governs grievances and arbitration. *See* July 1, 2000—June 30, 2005 CBA, Exhibit "A" to Complaint, at 44–45. Article XVII states, in pertinent part,

 [i]f any dispute arises between [Defendant] and [Plaintiff] as to any unadjusted grievance or as to the rights of either party under this Agreement, both parties shall endeavor to settle such matter in the simplest and most direct manner ....

 Article XVII then sets forth a four-step process for the settlement of grievances. The

The parties submitted the following issues to the arbitrator: "Did [Plaintiff] have proper cause to discharge the grievant, Stephen Brzezinski? If not, what is the remedy?" *See* Opinion and Award of Arbitrator Stuart M. Pohl ("Pohl Award"), Exhibit "C" to Complaint, at 3. Arbitrator Pohl allowed both parties to present witnesses and cross-examine each other's witnesses; he then issued a written decision on February 13, 2004, which sustained the grievance in part and denied it in part. At the conclusion of the arbitration, Arbitrator Pohl ordered Plaintiff to reinstate Mr. Brzezinski without backpay or benefits on a last-chance basis. Arbitrator Pohl further ordered Mr. Brzezinski to submit to a psychological evaluation of his fitness for duty at Plaintiff's request. Plaintiff has refused to reinstate Mr. Brzezinski.

## III. DISCUSSION

### A. Summary Judgment Standard

A court should grant a motion for summary judgment only if "there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)); *see also* Fed.R.Civ.P. 56(c). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)).

With these standards in mind, the Court will address Plaintiff's claims.

### B. The Award

 Federal courts have established a clear preference for upholding arbitration awards, particularly in the context of labor-management disputes. *See, e.g., Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir.1999) ("*Niagara Mohawk II*") (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). Courts will uphold an arbitrator's decision so long as it " ' "draws its essence from the collective bargaining agreement ...." ' " *Id.* (quotation omitted). With respect to the requirement that an arbitrator's decision draw its essence from the CBA, courts do not review an award's correctness; rather, the courts only review whether an award "is plausibly grounded in the parties' agreement." *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 32 (2d Cir.1997). Moreover, the arbitrator's factual findings, contract interpretation and suggested remedies also bind the parties. *See Niagara Mohawk II*, 196 F.3d at 124 (citation omitted).

 Despite this policy of "nearly total deference," a court may not enforce an arbitrator's award if the award is clearly contrary to public policy. *Niagara Mohawk II*, 196 F.3d at 125 (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). An award contravenes public

first step of the process allows a supervisor and aggrieved employee to work together to settle the grievance. The second step of the process allows Defendant's grievance committee to meet with a supervisor to settle the grievance. The third step allows the parties to create a System Council Committee, whose members meet with Plaintiff's vice president

or other authorized representative. If the grievance does not settle during any of the preceding steps, the parties must convene an arbitration board composed of one representative from each of the parties and a third, impartial arbitrator. The decision of a majority of the board of arbitrators binds both parties.

policy only when it " ' "create[s][an] explicit conflict with other laws and legal precedents" and thus clearly violates an identifiable public policy.' " *Id.* (quotation omitted). The party asserting that the award contravenes public policy bears the burden of establishing that the public-policy exception applies. *See id.* (citation omitted). Even where an arbitrator's award is " 'clearly erroneous,' " the award will not necessarily meet the public-policy exception. *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 950 F.Supp. 1227, 1231 (N.D.N.Y. 1996) (quotation and other citation and footnote omitted).

The Second Circuit first attempted to identify the contours of the public-policy exception in *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704 (2d Cir.1998) ("*Niagara Mohawk I*"). In *Niagara Mohawk I,* the employer sought to have the court vacate an arbitrator's conditional reinstatement of an employee who deliberately adulterated his mandatory drug test and subsequently tested positive for cocaine. *See id.* at 706. The Second Circuit declined to overturn the arbitrator's award, even though the employer cited Nuclear Regulatory Commission safety regulations which require owners of nuclear facilities to screen employees periodically to ensure that they are both trustworthy and reliable. *See id.* at 714. Moreover, the Second Circuit cautioned that, in reviewing an arbitration award for a violation of public policy, a court must focus on the *result* of the award and not the reasoning or fact finding that underlies the award. *See id.* at 716 (citing [*United Paperworkers Int'l Union v. Mis-*

*co, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ] ).

■ Plaintiff argues that Arbitrator Pohl's reinstatement of Mr. Brzezinski violates the well-established public policy of not permitting violent individuals to return to the workplace.[5] As support for its assertion that prevention of workplace violence is a well-defined public policy, Plaintiff contends that the Occupational Safety and Health Administration ("OSHA") has promulgated fact sheets and guidelines that reflect its growing activism in the area of workplace violence. In further support of its position, Plaintiff cites several cases, such as *G.B. Goldman Paper Co. v. United Paperworkers Int'l Union, Local 286*, 957 F.Supp. 607 (E.D.Pa.1997), which held that workplace safety is a " 'well defined and dominant' public policy," *id.* at 620 (quotation not attributed), as well as New York cases which show that employers have a common law duty to protect against employees who deliberately cause harm to others.[6] Moreover, Plaintiff attempts to distinguish this case from that of the reinstated employee in *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), by contending that Mr. Brezezinski poses a more serious threat to other employees.

Although Plaintiff is correct that *G.B. Goldman Paper Co.* held that workplace safety and the prevention of violence constitute a dominate public policy, the *G.B. Goldman Paper Co.* court stated that

[i]n addressing whether to vacate an arbitration award on workplace safety public policy grounds, a court must first

---

**5.** Plaintiff does not argue that the award exceeds the scope of the issue that the parties submitted to the arbitrator, nor does it argue that the award contradicts the express language of the CBA or fails to draw its essence from the CBA.

**6.** Plaintiff contends that the graphic nature of Mr. Brzezinski's threats, coupled with the fact that he did not stop making threats even after a demand from a supervisor, shows that he is foreseeably dangerous.

accept the facts as found by the arbitrator to gauge how dangerous the grievant-in-question is. Secondly, the court must then determine on the facts of that case the chance of harm that the grievant might pose to other people in the workplace if reinstated.

957 F.Supp. at 620. In this case, unlike others that fall within the public-policy exception, Arbitrator Pohl did not find that Mr. Brzezinski's behavior was violent or dangerous or that he posed a threat to his co-workers.[7] With respect to Plaintiff's argument that Mr. Brzezinski posed a more immediate threat than the employee in *Eastern Associated Coal*, weighing the respective dangers of certain types of workplace conduct is not within the scope of this Court's review.

Considering the specificity of Mr. Brzezinski's threats, Plaintiff's reluctance to permit him to return to work is understandable.[8] Nevertheless, the law does not support a finding that Arbitrator Pohl's decision is contrary to public policy. Although Plaintiff's submissions illustrate that OSHA, and employers in general, are concerned about workplace violence, Plaintiff's submissions acknowledge that no agency has implemented any specific legal regulations governing the issue. As a result, Plaintiff's case is actually somewhat weaker than the employers' respective arguments in *Niagara Mohawk I* and *Niagara Mohawk II*, in which a specific regulatory framework existed. In this case, Arbitrator Pohl's decision violated no specific provision of any law or regulation.

OSHA has not promulgated any express rules or regulations that require an employer to terminate an employee who has simply made verbal threats. Although the common law establishes that employers have a duty to protect employees, such a generalization does not meet the standards of *Niagara Mohawk I* or *Niagara Mohawk II* or *Eastern Associated Coal.* Rather, this case closely parallels others in which courts have refused to apply the public-policy exception to disturb an arbitration award.

Finally, since case law requires the Court to look at an arbitrator's final decision, this Court's review is limited to the question of whether reinstating an employee who has threatened others violates existing "laws and legal precedents." *Niagara Mohawk II*, 196 F.3d at 125. Plaintiff has not met the burden of providing any specific laws and legal precedents which the award violates. Accordingly, the Court denies Plaintiff's cross-motion for summary judgment and grants Defendant's motion for summary judgment.

**C. Defendant's request for attorneys' fees and sanctions under Federal Rule of Civil Procedure 11(b)(2)**

Federal Rule of Civil Procedure 11(b)(2) permits a court, in its discretion, to impose sanctions on a party when it has asserted frivolous claims. *See* Fed.R.Civ.P. 11(b)(2); 11(c). To initiate a motion for sanctions against an opposing party, the moving party must make a separate mo-

---

**7.** Defendant has objected to the content of Plaintiff's Statement of Material Facts. *See* Dkt. No. 9. Since the Second Circuit counsels deference to an arbitrator's factual findings, the Court has relied on Arbitrator Pohl's factual findings with respect to this analysis.

**8.** Defendant argues that Plaintiff has misconstrued Arbitrator Pohl's decision, as Arbitrator Pohl did not specifically find that Plaintiff

had threatened other employees. However, Arbitrator Pohl essentially did find that Plaintiff made the threats, as he stated in his decision that "[t]he statements were wrong. Particularly in today's environment of terrorist attacks and work place violence, employees should avoid making such comments at all times. Grievant exercised extremely poor and immature judgment ...." *See* Pohl Award at 13.

tion that describes the offending conduct. *See id.* The moving party may not file the motion with the court until it has given the non-moving party twenty-one days to withdraw the allegedly frivolous claim. *See id.*

According to Defendant, it is entitled to attorneys' fees because Plaintiff's request for vacation of the award is frivolous. Defendant does not cite any Second Circuit law in support of its contention but cites *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247 (7th Cir.1986), to support its assertion that a union is entitled to attorneys' fees where an employer has frivolously contested an arbitrator's award.

The Court cannot address the merits of Defendant's argument, however, because, as Plaintiff points out, Defendant has failed to comply with Rule 11(b)(2)'s procedural prerequisites.[9] Accordingly, the Court denies Defendant's motion for sanctions and fees.

### D. Defendant's request for backpay

Defendant has requested that this Court award backpay to Mr. Brzezinski from February 13, 2004, the date of Arbitrator Pohl's award, onward. Plaintiff has objected, contending that the period of backpay should exclude, at a minimum, the period of time between this Court's decision and the date on which Plaintiff receives a satisfactory psychiatric evaluation of Mr. Brzezinski. Since Arbitrator Pohl directed Mr. Brzezinski to submit to the examination, the Court orders that Arbitrator Pohl file a written clarification with this Court indicating the date on which

Plaintiff's obligation to award backpay to Mr. Brzezinski begins to run.

### IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein as well as at oral argument, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with regard to all issues except for the issue of backpay; and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment is **DENIED** in its entirety; and the Court further

**ORDERS** that Defendant's motion for fees and sanctions pursuant to Rule 11(b)(2) of the Federal Rules of Civil Procedure is **DENIED**; and the Court further

**ORDERS** that, within thirty days of the date of this Order, Arbitrator Pohl is to submit a written clarification with the Court, and serve a copy of the same on counsel for both parties, indicating the date on which Plaintiff's obligation to award backpay to Mr. Brzezinski begins to run.[10]

**IT IS SO ORDERED.**

---

9. Even if the Court were to reach the merits of Defendant's motion, considering the seriousness of the allegations against Mr. Brzezinski, Defendant has not met its burden of showing that Plaintiff's challenge to the award was unjustified.

10. Once it reviews Arbitrator Pohl's clarification on the issue of backpay, the Court will enter an Order regarding that issue and will also order that the Clerk of the Court enter a judgment in this case at that time.